light of this infirmity that you are to weigh it. And when you come to consider and weigh the testimony of conversations, or declarations, or admissions, you may look at it in the light of the infirmity that the conversation may have been indistinctly heard, may have been imperfectly recollected, may have been incorrectly detailed on the witness stand; but it requires no higher degree of care for its consideration than any other class of testimony in the case.

Now after looking at all the testimony in the case, in the light of the circumstances, if you are satisfied beyond a reasonable doubt that the accused is guilty, it is your duty to say so. If you are not so satisfied it is your duty to acquit.

When you retire to your jury room you will appoint one of your number foreman, and having agreed upon a verdict you will reduce it to writing, have your foreman sign it, and return with it into court. You may retire.

Robert H. Day, Prosecuting Attorney, for the State of Ohio.

Chas. C. Upham, for Defendant August Hahn.

---

(Police Court of Columbus.)
August, 1900.
THE STATE OF OHIO v. THOMAS X. JONES.

---

*Charge: Embezzlement—*

(1). Where the manager or employe by the terms of his employment with his employer is required to immediately pay over or deposit in bank subject to the draft of the principal the specific sum or proceeds received by him from each sale, the sum so received is the money or property of his employer and cannot be converted to his own use by the manager or employe for an alleged sum due upon his salary or for money claimed to have been, or that has been paid for the incidental expenses of carrying on the business.

(2). Where the manager or employe so employed receives money and neglects and refuses to pay over the same as required by the terms of his employment, the wrongful and illegal act sufficiently characterizes the intent.

---

EARNHART, J.

The accused some years ago entered into the employ of the Plano Manufacturing Company as its general manager to sell farm implements without the state of Ohio. By the express and written terms of his employment he was to deposit in bank in the name of the Plano Manufacturing Company all money received from any source whatsoever by reason of his employment.

He received at first a salary of $1,800.00 per year and traveling expenses, and later this was reduced to $1,500.00 a year and traveling expenses.

His compensation was paid in monthly payments upon his statements made to the company, and upon the back of each check sent in payment, the accused indorsed the sum received was "in full for salary and traveling expenses to date."

The company also furnished the accused with funds to pay incidental expenses of the Branch House, the principle office being in Chicago, Illinois. The sum so furnished for incidental expenses was deposited in bank in the defendant's name as agent and used to defray legitimate office expenses, and at the end of each month the accused was to render to his employer a statement of the account and could make a requisition in advance for sums desired in the prosecution of the business.

He continued manager for the company until the close of the year 1899. He is now accused of at various times receiving by virtue of his employment some $1,500.00 or $1,800.00 in money from sales for his employer and converting the same to his own use without ever informing the company of his reception of said sums or depositing them in bank in the name of the company. He admits the reception of the various sums, but claim there were legitimate branch office expenses that were rejected from time to time, and that his salary was increased in September, 1899, from $1,500.00 to $1,800.00, and that he appropriated this money of the company so received by him in compensation for the alleged balance of the sums due him from the Plan Manufacturing Company for incidental expenses of the office and unpaid salary.

"Where a defendant is entitled to a commission out of the funds collected for his services, the entire sum, until a division is made, is the property of his employer." Campbell v. State, 35 Ohio St., 75.

Even where the services of the employe are paid for in whole or in part by commissions or profits on the sales, he has no right of property in the goods or money received from them, and a felonious conversion to his own use of the money would constitute the crime of embezzlement.

Commonwealth v. Smith, 129 Mass., 109.

"The law presumes that every man intends the consequences of his acts. Wrongful acts, knowingly or intentionally done, can neither be justified nor excused on the ground of innocent intent." U. S. v. Harper, 33 Fed. Rep., 481.

If the defendant had upon the receipt of a certain sum then and there held it and immediately notified the company

that he had and held it in tact and would not pay it over until his certain compensation as manager then due was paid, a more serious question might arise as to his criminal intent, but he cannot without the knowledge and consent of his employer become his own paymaster out of the money of the company. Such a use of his employer's money and management of its business involves legal and moral turpitude.

The mere fact, if true, that the employer did not compensate the employe for his services will not authorize a wrongful conversion of his money. The employe has his remedy for any breach of contract. The implements or money received from the sale of the same were by the express provisions of the contract the money or property of the employer and the employe was bound by their specific terms of his employment to deliver the specific proceeds of any sale to the principal, and he had no authority to withhold or convert the same for an alleged balance due him. The money belonged to the employer, and any dealings with it by the employe were in a trust capacity, in no way affecting or destroying the right of property in the principal.

---

(Superior Court of Cincinnati.)
Special Term.

WILLIAM P. LEEDS v. JOHN B. PEASLEE et al.

A clerk of court is under no duty to either prepare, or pass upon the legal effect when prepared, of a bond for stay of execution; and hence he is not liable for damages should the bond prove insufficient to stay the execution. Such a bond, although left in the custody of the clerk, is the property of the defendant in error, and it is his right and duty to examine it with reference to its sufficiency to stay the execution.

---

DEMPSEY, J.

This is an action brought by the plaintiff on the official bond of John B. Peaslee, as clerk of the common pleas court of Hamilton county, to recover damages alleged to have been sustained by plaintiff, who was a party to an action in one of our courts to the judgment in which error was prosecuted, and wherein the said Peaslee is alleged to have taken a bond in stay of execution which was conditioned under subdivision 1 of section 6718, when it ought to have been conditioned under subdivision 3. The petition, after averring facts setting forth at large the above particulars, then alleges that said Peaslee, as such clerk, approved the ond as taken as sufficient in form and

law under the order of the court under which it was given, and duly filed the same, and entered upon the appearance docket of the court the following: "May 31. Minute 1408: Entry staying execution. Bond, $1,500; bond 1709, book 7, in $1,500 filed." It further alleges that plaintiff had no knowledge but what Peaslee had taken the bond as ordered by the court, nor but what he had acted in all respects in accordance with law and the order of the court, and believed he had so acted and taken the proper bond as ordered, and consequently did not issue an order of sale or execution upon the judgment by reason of such belief; and then goes on to aver the damage. The petition was met by a general demurrer.

The condition of the official bond of Mr. Peaslee, which forms the gist of this action, is that one which provides that he "shall faithfully and impartially discharge and perform all and singular the duties of his said office." Now, what were Mr. Peaslee's duties, as clerk, with regard to bonds given by way of supersedeas? Section 4965, Revised Statutes, provides that "the clerk of each of the courts shall exercise the powers conferred and perform the duties enjoined upon him by statute and by the common law; and in the performance of his duties, he shall be under the direction of the court."

By the common law there was no duty enjoined or power conferred upon the clerk with regard to supersedeas bonds, because at common law no such bond was required, the writ of error, if obtained and allowed before execution, suspending the execution till the error proceeding was determined. Stephen on Pleading, 142. To remedy evils arising from this method of procedure, it was provided by various statutes that, to stay the execution, bail in error should be given. Stephen on Pleading, 142, note L. This requisite was prescribed in Ohio from the beginning of the state, so that, in this respect, we must look to the provisions of our statutes to ascertain what the duties of the clerk are. What the nature of these duties are is to be found in sections 6718 and 6719. Revised Statutes. Section 6718 provides that "no proceeding to reverse, vacate or modify a judgment or final order * * * shall operate to stay execution, unless the clerk * * * take a written undertaking, to be executed on the part of the plaintiff in error to the adverse party, with sufficient surety, as follows:" and then follow various forms of conditions depending upon the character of the judgment sought to be reviewed. Section 6719 provides that "before the written undertaking mentioned in 6718 shall operate to stay execution, * * * the execution of the undertaking and the